**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARCUS SCHABACKER and** | : | |
| **EMERGENCY CARE RESEARCH** | : | |
| **INSTITUTE doing business as ECRI,** | : | |
| *Plaintiffs,* | : | |
| | : | |
| **v.** | : | **CIVIL NO. 22-3778** |
| | : | |
| **STEVEN FERENS,** | : | |
| *Defendant.* | : | |

<u>**MEMORANDUM OPINION**</u>

**Scott, J.**                                                                                  **February 21, 2024**

      Plaintiffs Emergency Care Research Institute d/b/a/ ECRI ("ECRI") and its CEO and President, Marcus Schabacker ("Dr. Schabacker") assert claims against Steven Ferens, a former ECRI employee for defamation, breach of the non-disparagement and return of property provisions of Mr. Ferens's severance agreement, intentional infliction of emotional distress ("IIED"), and for violations of the Pennsylvania Uniform Trade Secrets Act ("PAUTSA"), the Federal Defense of Trade Secrets Act ("DTSA") and the Lanham Act.  The plaintiffs allege that Mr. Ferens, who was fired from his position for insubordination, defamed them on the internet when he posted, anonymously, that Dr. Schabacker had been accused of "sexual harassment"; sent anonymous, threatening text messages to several senior officers at ECRI who were involved in his firing, which threatened physical and emotional harm to them and their children and families; and misappropriated ECRI's confidential, proprietary pricing information when he downloaded the contents of his ECRI-issued laptop onto a flash drive and transferred the contents to his personal computer.

      Mr. Ferens moves for summary judgment on all of the plaintiffs' claims.  For the reasons

that follow, the Court will grant Mr. Ferens's motion as to the claim brought under the Lanham Act, and will deny his motion as to the rest of the plaintiffs' claims.

## BACKGROUND

ECRI provides healthcare products and services, including patient safety guidance, price benchmarking, and value analysis for medical products and equipment, to healthcare providers. See Am. Compl. (ECF No. 34) ¶ 21.  Dr. Schabacker, is the President and CEO of ECRI, and Mr. Ferens is a former high-level ECRI employee who served as Area Vice President until his termination effective October 4, 2021.  *Id.* ¶¶ 20, 23.

The plaintiffs allege that Mr. Ferens is a disgruntled, former high-ranking employee of ECRI who was fired because he "flew off the handle" in disrespectful and unprofessional emails directed to ECRI's President and CEO and other members of ECRI's senior leadership team. Despite his insubordination, ECRI offered Mr. Ferens a severance agreement, which included clear and unambiguous terms mandating that he return all ECRI Property, and refrain from disparaging, criticizing, impugning, damaging, or assailing the reputation of ECRI and its employees and officers, in exchange for twenty weeks of severance pay.  He executed the agreement on October 8, 2021.

The plaintiffs allege that only one month later, on November 5, 2021, Mr. Ferens posted the following review on Glassdoor.com, a job and recruiting website where current and former employees anonymously review companies: "Cons -- CEO is now being accused of sexual harassment.  This guy is a train wreck that has destroyed the culture in the 3 years he has been here.  Sales stink.  People are leaving."  Am. Compl. ¶ 52; *See* Pls.' Memo of Law in Support of Their Resp. in Opp'n to Def.'s Mot. for Summ. J. (ECF No. 45) ("Pls.' Br.") at 22.  Although Mr. Ferens posted it anonymously, he has since acknowledged that he made the post and he voluntarily

took it down four days later.  Br. in Support of Def. Steven Ferens' Mot. for Summ. J. (ECF No. 43-1) ("Def.'s Br.") at 1.

The plaintiffs further allege that from June 2021 through May 2022, Mr. Ferens sent anonymous, profanity-filled text messages to Dr. Schabacker, Theresa Tavernier, Chief of Human Resources, Stuart Morris-Hipkins, Chief of Solutions, and Jim Robertson, Vice President of Sales, which threatened physical and emotional harm to the ECRI executives and their children and families.  Am. Compl. ¶¶ 85–90.  All of the recipients of these texts were directly involved in Mr. Ferens's termination and severance determinations.

Additionally, Mr. Ferens sent text messages to a former employee of ECRI that disparaged ECRI and its employees, stating that ECRI "screwed" him, treated him like "shit," and that ECRI's officers were "bad people" and "idiots."  Am. Compl. ¶¶ 104–105.

According to the amended complaint, just before he left the company, Mr. Ferens downloaded the contents of his ECRI-issued laptop onto a flash drive and transferred the contents to his personal computer, which included ECRI's confidential, proprietary "price calculator."

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party.  Fed. R. Civ. P. 56(a).  Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 151 (3d Cir. 2017) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which she bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "[O]nly evidence sufficient to convince a reasonable factfinder" merits consideration at this stage. *Fowler v. AT & T, Inc.*, 19 F.4th 292, 299 (3d Cir. 2021) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

In considering the motion, we draw all reasonable inferences in the nonmovant's favor. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022). Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted). Credibility determinations, the drawing of legitimate inferences from facts and the weighing of evidence are matters left to the jury. *Anderson*, 477 U.S. at 255.

## DISCUSSION

### *Claim for Unfair Competition Under the Lanham Act*

In Count I, ECRI brings a federal unfair competition claim for false advertising under § 1125(a)(1)(B) of the Lanham Act, alleging that Mr. Ferens's "disparaging review" on Glassdoor.com was false and misleading regarding the status of ECRI's "sales, employment, and

company culture;" was used to dissuade existing or potential customers or clients from doing business with ECRI and "has caused or is likely to cause competitive or commercial injury" to ECRI.  Am. Compl. ¶¶ 97–101.

Claims brought under this provision apply only to commercial speech.  *Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013).  To determine whether speech is commercial, the court considers three factors: "(1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech." *Facenda v. N.F.L. Films, Inc*., 542 F.3d 1007, 1017 (3d Cir. 2008) (quoting *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 933 (3d Cir. 1990)).  At its "core," commercial speech "proposes a commercial transaction." *Bolger v. Youngs Drug Prods. Corp*., 463 U.S. 60, 66 (1983) (citation omitted).

Here, the Glassdoor.com post was not an advertisement, did not promote a product, and was not part of a proposed commercial transaction.  At most, it was a review or rating of ECRI. Reviews and ratings are not usually considered to be commercial speech actionable under the Lanham Act.  *See GOLO, LLC v. HighYa, LLC*, 310 F. Supp. 3d 499, 507 (E.D. Pa. 2018) (editorial reviews of diet product by consumer review companies did not qualify as commercial speech for a Lanham Act claim); *Crash Proof Ret., LLC v. Price*, 533 F.Supp.3d 227 (E.D. Pa. 2021) (article critical of investment strategy was not commercial speech).  Therefore, Mr. Ferens's post on Glassdoor.com does not qualify as commercial speech, and ECRI's claim under the Lanham Act is dismissed with prejudice.

*Claim for Intentional Infliction of Emotional Distress*

Dr. Schabacker asserts a claim for intentional infliction of emotional distress ("IIED") in Count VII.  To state an IIED claim, "(1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; [and] (4) that distress must be severe."  *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998).  Mr. Ferens argues that Dr. Schabacker cannot meet his burden to prove the elements of this claim because he has not presented evidence establishing that Mr. Ferens engaged in the alleged conduct or that the conduct was outrageous and extreme.  He also contends that to be able to recover for emotional distress, Dr. Schabacker is required to seek medical treatment for the severe emotional distress he claims to have experienced.

The Court disagrees.  There is ample evidence from which a jury could find that Mr. Ferens sent the text messages that threatened Dr. Schabacker and his son, along with other ECRI executives and their families.  A jury could also find that this conduct was "extreme and outrageous" under Pennsylvania law.  Additionally, Dr. Schabacker is not required to seek medical treatment for his emotional distress as long as he provides competent expert testimony as to his condition.  He has submitted an expert report on his severe emotional distress.  Thus, the IIED claim survives summary judgment, and the defendant's motion is denied as to this count.

*Claim for Defamation*

Dr. Schabacker and ECRI assert a claim for defamation in Count IV based on the statement Mr. Ferens posted on Glassdoor.com, "Cons – CEO is now being accused of sexual harassment" in November 2021.  They allege that the statement was false, and "injured Dr. Schabacker in his personal, professional, and/or business reputation, and ECRI in its business reputation."  Am. Compl. ¶¶ 120.

To state a claim for defamation in Pennsylvania, a plaintiff must meet seven elements: "(1) The defamatory character of the communication. (2) Its publication by the defendant. (3) Its application to the plaintiff. (4) The understanding by the recipient of its defamatory meaning. (5) The understanding by the recipient of it as intended to be applied to the plaintiff. (6) Special harm resulting to the plaintiff from its publication. (7) Abuse of a conditionally privileged occasion." *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 424 (Pa. 2015) (quoting 42 Pa. C.S. § 8343(a)); *Graboff v. Colleran Firm*, 744 F.3d 128, 135 (3d Cir. 2014) (citations omitted).

In an action for defamation libel, *i.e.,* where the defamatory statement was made in writing, a plaintiff is not required to show "economic harm" or "pecuniary loss" to meet the "special harm" element in § 8343(a). *Joseph*, 129 A.3d at 429 n.10 ("Consistent with Restatement (Second) of Torts § 569, Pennsylvania case law holds that proof of special harm, *i.e.,* monetary damages, is not a prerequisite to recovery in a defamation libel matter."). However, to meet the "special harm" element, a plaintiff must show "actual harm" to his reputation, such as lowering his standing in the community or deterring third parties from associating or dealing with him. *Joseph*, 129 A.3d at 429-30. Once the plaintiff shows proof of actual reputational injury, he is then permitted to seek recovery of damages for other actual injuries, including mental anguish and suffering, and personal humiliation, and mental anguish and suffering. *Id.* at 429.

Mr. Ferens contends that the plaintiffs have failed to make out a *prima facie* case of defamation because they have adduced no evidence of special harm suffered by the plaintiffs from the publication. In support of this contention, he disputes the reliability of the Glassdoor.com View Chart on which plaintiffs rely to claim that 3500 individuals viewed his post as showing how many people actually viewed the post. Additionally, he points to the plaintiffs' inability to identify

specific individuals whose perception of ECRI and/or Dr. Schabacker were negatively affected by viewing the post.

The plaintiffs counter that the large number of views reflected on the View Chart supports their claim that their reputation was impaired by the post. Additionally, they note that the very point of the Glassdoor website is to establish a reputation for a work place.

The Court concludes that the plaintiffs have established that there is a genuine dispute of material fact as to whether Ferens's post on Glassdoor.com caused damage to their reputation. Therefore, the plaintiffs have made out a *prima facie* case of defamation.

Mr. Ferens argues that even if the plaintiffs have established the elements of their defamation claim, he has an absolute defense because the statement that he posted on Glassdoor.com was "substantially true." Def.'s Br. at 16-20. Under 42 Pa. C.S. § 8343(b), if the plaintiff establishes the elements for a defamation claim, the defendant then has the burden of proving:

> (1) The truth of the defamatory communication;
>
> (2) The privileged character of the occasion on which it was published; or
>
> (3) The character of the subject matter of defamatory comment as of public concern.

42 Pa. C.S. § 8343(b). "A defendant may avoid liability for defamation if it shows that its statements were "substantially true." *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (citations omitted).

Mr. Ferens contends that Dr. Schabacker acknowledged at his deposition that Ms. O'Rourke had accused him of misconduct, which shows that the statement was true. Def.'s Br. at

17.  However, the testimony cited by Mr. Ferens[1] does not clearly show when she made the purported "accusations," nor what the "accusations" were.  Thus, the court cannot determine if they were accusations of sexual harassment.

Mr. Ferens also relies on evidence that Kate O'Rourke, a former ECRI salesperson, was "considering" filing a sexual harassment claim against Dr. Schabacker before Mr. Ferens posted his statement on Glassdoor.com.  He points to Ms. O'Rourke's testimony that she consulted with her lawyers, whom she had hired to negotiate a severance agreement for her,[2] about whether she could pursue a sexual harassment claim against Dr. Schabacker based on instances where he had made her feel uncomfortable.[3]  Def.'s Br. at 18.  He also points to what he heard from third parties, including that Ms. O'Rourke was "contemplating" filing sexual harassment charges against Dr. Schabacker.  Def.'s Br. at 18-19.

Plaintiffs counter that Dr. Schabacker was never "accused" of sexual harassment by Ms. O'Rourke (or anyone else) because "contemplating" filing a charge against someone or telling others that you're considering filing a charge is not the same as *accusing* someone of the act. Because Ms. O'Rourke never made a claim alleging that Dr. Schabacker had sexually harassed her, either directly to ECRI in writing or in a court or administrative tribunal, they argue that the Glassdoor.com statement was not "substantially true."  Pls.' Br. at 17-18.

---

[1] Dr. Schabacker's specific testimony cited is as follows: "I don't know if she mentioned that at that point, but I think her intimation was that she had to face me with accusations which she knew weren't true."  *See* Def.'s Proposed Statement of Undisputed Material Facts (ECF No. 43-2) ¶ 151 (quoting Schabacker dep. at 134:10-135:16).

[2] Ms. O'Rourke hired lawyers after she was terminated from ECRI in June 2021.

[3] Ms. O'Rourke never submitted a written statement or claim of sexual harassment against Dr. Schabacker to ECRI or Dr. Schabacker directly.

In short, Mr. Ferens contends that Ms. O'Rourke had "accused" Dr. Schabacker of sexual harassment to multiple people, including her counsel, at the time of Mr. Ferens's post, and at the same time was contemplating whether to formally act on her belief and accusation by filing a claim or putting it in writing to ECRI. The plaintiffs, on the other hand, contend that "contemplating" whether to formally act on her belief by filing charges and talking to other people about this decision is not the same thing as making an "accusation." Pls.' Br. at 17.

The court finds that there are genuine issues of material fact in dispute as to whether Ms. O'Rourke "accused" Dr. Schabacker of sexual harassment at the time of Mr. Ferens's post on Glassdoor.com. Thus, it will be up to a jury to decide whether the statement posted on Glassdoor.com was "substantially true," and Mr. Ferens's motion for summary judgment on the plaintiffs' defamation claim is denied.

*Claim for Breach of Contract – Non-Disparagement Clause*

In Count II, the plaintiffs assert a claim for breach of contract based on the breach of the non-disparagement clause in Mr. Ferens's severance agreement with ECRI, where he agreed not to disparage ECRI or its officers to any third party by any medium. Am. Compl. ¶ 103. The plaintiffs point to several statements made by Mr. Ferens that were in violation of the non-disparagement clause: Ferens's post on Glassdoor.com post, which stated: "Cons -- CEO is now being accused of sexual harassment. This guy is a train wreck that has destroyed the culture in the 3 years he has been here. Sales stink. People are leaving;" and text messages Ferens sent to a former employee of ECRI, stating that ECRI "screwed" him, treated him like "shit," and that ECRI's officers were "bad people" and "idiots." Am. Compl. ¶¶ 104–105.

The non-disparagement clause in the severance agreement provided as follows:

> Non-disparagement Obligation. You will not at any time make any statements, or cause or encourage others to make any statements, that (i) are calculated to or which may tend to disparage, defame, criticize, impugn, damage, or assail the reputation of any Released Party or any of the products, services, or business practices of any Released Party, or (ii) cause or may tend to cause the recipient of the communication to question the integrity or character of any Released Party or any of the products, services, or business practices of any Released Party. Statements prohibited by this Section include both verbal and written statements made to any third party and through any medium including letters, e-mails, television, radio, computer networks, blogs, social media, or any other form of communication. Nothing in this Section is to be construed to prohibit you from making such statements if your required to do so by law or subpoena.

Severance Agreement, § (8)(c), Am. Compl. ¶ 49.

Mr. Ferens proffers several reasons why the plaintiffs have not met their burden of showing that he breached the non-disparagement clause. First, he contends that because "disparage" is not defined in the severance agreement, but it "precedes the word 'defame,'" "disparage" has the same meaning as "defame." He then reasons that because truth is an absolute defense to a defamation claim, and his Glassdoor post was substantially true,[4] he did not breach the non-disparagement clause. Def.'s Br. at 10–11.

Mr. Ferens's interpretation of the non-disparagement clause is incorrect. A plain reading of the clause prohibits Ferens from disparaging *or* defaming *or* criticizing *or* assailing the reputation of any ECRI's officers or any of its products, services or business practices. He is not just precluded from defaming them. Consequently, Mr. Ferens is in breach of the non-disparagement clause if he says anything critical of ECRI or its officers. Because "criticism" is still "criticism," even if the critical statement is true and accurate, its truth is not a defense to the

---

[4] Mr. Ferens refers to the arguments he makes that the Glassdoor post was true in the section of his brief discussing the defamation claim. *See* Def.'s Br. at 11.

breach of the non-disparagement clause.  It is clear that Mr. Ferens's statements on Glassdoor.com -- that ECRI's "CEO is now being accused of sexual harassment," and that he "is a train wreck that has destroyed the culture in the 3 years he has been here" -- as well as the text messages Mr. Ferens sent to a former employee stating that ECRI "screwed" him, treated him like "shit," and that ECRI's officers were "bad people" and "idiots," constitute criticism of both ECRI and Dr. Schabacker.

Additionally, as explained *supra* in the section discussing the defamation claim,  even if truth of the Glassdoor post was a defense to the claim for breach of the non-disparagement clause, the court has previously found that there are facts in dispute as to whether the statement posted on Glassdoor.com was "substantially true."  Thus, this defense is not available to Mr. Ferens at this time.

Mr. Ferens also argues that because his Glassdoor.com post did not attack "the quality" of ECRI's goods or "reduce their marketability," it did not constitute "commercial disparagement." He further argues that even if it constituted commercial disparagement, a claim for commercial disparagement requires proof of actual pecuniary loss, which the plaintiffs have not shown they suffered.  For example, he contends that they have not provided evidence of loss of revenue, sales or employees, or difficulty hiring employees, or pecuniary loss due to reputational harm.[5]  Def.'s Br. at 11–12.

This argument does not apply to the clause at issue.  The language of the disparagement clause does not require that the statement be "commercial" in nature.  Mr. Ferens is prohibited from disparaging, defaming, criticizing, impugning, damaging or assailing the reputation of any

---

[5] Mr. Ferens refers to the arguments he makes that the plaintiffs failed to show reputational damage resulting from the Glassdoor post in the section of his brief discussing the defamation claim.  *See* Def.'s Br. at 12.  ant

of ECRI's officers *or* any of its products, services or business practices.  Consequently, Mr. Ferens's contention that a claim for commercial disparagement requires proof of actual pecuniary loss is not applicable.  Additionally, as explained *supra* in the section discussing the defamation claim, the court has previously found that there are facts in dispute as to whether the Glassdoor.com post caused damage to the plaintiffs' reputation.

Finally, Mr. Ferens argues that the plaintiffs are not entitled to recover money damages, including attorney's fees, for breach of the non-disparagement clause because the severance agreement does not provide for damages.  Def.'s Br. at 12.

Under Pennsylvania law, a plaintiff seeking to proceed with a breach of contract action must establish:  "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages."  *Ocasio v. Prison Health Servs.*, 979 A.2d 352, 355 (Pa. Super. Ct. 2009) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

The provision for remedies in the severance agreement provides as follows:

> Remedies. If you breach or threaten to breach the restrictions in this [Non-Disparagement] Section, ECRI may seek a temporary restraining order and injunctive relief restraining you from breaching or continuing to breach this Agreement. This is not to be construed as prohibiting ECRI from pursuing any other remedies, including the recovery of money damages.

Severance Agreement, § (8)(f), Am. Compl. ¶ 108.

For a plaintiff to recover money damages based on a breach of a contract, the contract need not state that money damages are available in the event of a breach.  The plaintiff only needs to show that his damages resulted from the breach to recover them.  *Corner Pocket, Inc. v. Travelers Ins.*, No. CIV.A. 12-288, 2013 WL 4766293, at *4 (W.D. Pa. Sept. 4, 2013) ("It is hornbook law that the remedy for a breach of contract is the compensatory damages that put the non-breaching

party in the position he would have been in had the breaching party performed on the contract.")

(citing Joseph M. Perillo, Calamari and Perillo on Contracts § 14.5 (6th ed.2009); UCC § 1–106;

revision § 1–305; Corbin § 55.3.)).

Thus, the plaintiffs can seek compensatory damages from Mr. Ferens that resulted from his

breach of the non-disparagement clause. Additionally, under a plain reading of the remedies

clause, the plaintiffs may seek the recovery of money damages, as well as injunctive relief.

Therefore, Mr. Ferens is not entitled to summary judgment on the plaintiffs' a claim for breach of

contract based on the breach of the non-disparagement clause.

*Claim for Breach of Contract – Failure to Return ECRI Property*

In Count III, ECRI asserts a claim for breach of the severance contract based on Mr.

Ferens's failure to return all paper and electronic files and flash drives that contained any

information compiled by him or furnished to him by ECRI while he was employed at ECRI. Am.

Compl. §§ 109–113. ECRI alleges that he transferred its information, including ECRI's "price

calculator," from his ECRI issued laptop to a flash drive and then to his personal laptop. It further

alleges that Mr. Ferens's breach of his contractual obligation to return ECRI Property has damaged

ECRI by "exposing the public disclosure of ECRI's highly proprietary information, including to

ECRI's competitors such as Curvo Labs (Ferens' employer) and ECRI's former employee with

whom Ferens promised to share ECRI's confidential information." Am. Compl. ¶ 113.

Mr. Ferens does not dispute that he retained ECRI's information on his laptop. He

contends, however, that after a neutral third-party vendor was hired to audit, capture and remediate

the ECRI information on his laptop, it is undisputed that Mr. Ferens did not actually disclose any

of ECRI's proprietary information to any third parties. Consequently, he argues, ECRI has failed

to show that it sustained any harm by Mr. Ferens retaining this information on his laptop. Because the severance agreement does not expressly provide for specific damages as a result of his failure to return ECRI's information, and because ECRI has suffered no damages, he argues that ECRI has not established a claim for breach of the severance agreement for failure to return property. Def.'s Br. at 13–14.

ECRI has put forth evidence of actual damages resulting from Mr. Ferens's retention of its property on his laptop and his promises to send the information to a former ECRI employee and to a competitor. ECRI initially paid the third-party vendor $2,500.00, but will likely have to pay him an additional $16,000.00. *See* Pls.' Br. at 20. In addition to money damages, ECRI seeks injunctive relief, requiring Mr. Ferens to fully and completely return the confidential, proprietary information. ECRI has shown that there are genuine issues of material fact in dispute as to whether it sustained damages as a result of Mr. Ferens's retention of ECRI's property on his laptop and his promises to send the information to a former ECRI employee and to a competitor. Therefore, Mr. Ferens's motion for summary judgment on the plaintiffs' claim for breach of the severance contract based on his failure to return ECRI's property is denied.

### *Claims for Violations of the Federal Defense of Trade Secrets Act and the Pennsylvania Uniform Trade Secrets Act*

In Counts V and VI, the plaintiffs assert a claim for violation of the Federal Defense of Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.* and the Pennsylvania Uniform Trade Secrets Act ("PAUTSA"), 12 Pa. C.S. § 5301, *et seq.*, respectively. The plaintiffs allege that ECRI's price calculator was a "trade secret," as defined under the DTSA and PAUTSA, which Mr. Ferens misappropriated when he transferred the calculator and related information to his personal laptop.

To establish a claim for trade secret misappropriation claim under the DTSA, a plaintiff must demonstrate

> (1)  the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret;
>
> (2)  that is related to a product or service used in, or intended for use in, interstate or foreign commerce, and
>
> (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret.

*Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (citing 18 U.S.C. §§ 1839(3); 1836(b)(1), (3); 1839(5)).  The PAUTSA defines "misappropriation" essentially the same way. *See Jazz Pharms., Inc. v. Synchrony Grp., LLC*, 343 F. Supp. 3d 434, 445 (E.D. Pa. 2018) ("Under the DTSA and the PUTSA, 'misappropriation' of trade secrets includes the 'acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means' or the 'disclosure or use of a trade secret of another without express or implied consent.'").

Although DTSA and PUTSA do not use the exact same wording to define a trade secret, both essentially define it as information that: (a) the owner has taken reasonable means to keep secret; (b) derives independent economic value, actual or potential, from being kept secret; (c) is not readily ascertainable by proper means; and (d) others who cannot readily access it would obtain economic value from its disclosure or use.  *Elmagin Cap., LLC v. Chen*, 555 F. Supp. 3d 170, 178 (E.D. Pa. 2021) (citing 18 U.S.C. § 1839(3); 12 Pa. C.S. § 5302)).  "Whether a particular piece of information . . . constitutes a trade secret is generally a question of fact."  *Id.* at 179 (citing *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 410 (E.D. Pa. 2009)).

Mr. Ferens argues that ECRI cannot establish that its price calculator is a trade secret because there is "no evidence that 'the information derived independent economic value' from being generally unknown/unattainable through proper means, . . .[or] that ECRI took reasonable means to 'keep such information secret.'"  Def.'s Br. at 22.

The plaintiffs have put forth evidence that its pricing calculator is the product of using proprietary data to devise pricing formulas.  Because the calculator contains more than just "pure pricing information," this is enough to consider it a trade secret.  *See SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1260 (3d Cir. 1985) (finding that a company's proprietary pricing formulae derived from a "range of data relat[ed] to materials, labor, overhead, and profit margin" is entitled to trade secret protection); *Freedom Med. Inc. v. Whitman*, 343 F. Supp. 3d 509, 520 (E.D. Pa. 2018) (finding trade secrets to include a company's pricing schedules that were the product of a comprehensive budgeting process) (citing *SI Handling Sys.*, 753 F.2d at 1260). Additionally, ECRI has offered evidence that the price calculator was not readily accessible to unauthorized users via proper means.

Mr. Ferens next argues that even if the price calculator is a trade secret, the plaintiffs cannot establish that he "misappropriated" any trade secrets within the meaning of either the DTSA or the PAUTSA.  To prove misappropriation of a trade secret, the plaintiffs have to prove a "knowing improper acquisition," or "use or disclosure of the secret."  Mr. Ferens contends that he did not acquire the pricing calculator information through improper means, because ECRI provided him with the information initially, and he just saved a duplicate of the information on his personal computer.  He argues that he did not "use" the pricing calculator information because copying the information to his personal computer was not a "use" under the statutes.  Finally, he notes that he

did not disclose any proprietary information to anyone, as per the third-party vendor who audited his laptop.  Def.'s Br. at 22–23.

A "misappropriation" of trade secrets includes the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means."  Mr. Ferens admits that he copied the pricing calculator onto his personal laptop without authority from ECRI, that he knew it was wrongful, and that he unlawfully retained it on his personal laptop.  The court concludes that issues of fact exist as to whether ECRI's price calculator is a trade secret and whether Mr. Ferens misappropriated it through either improper acquisition, use or disclosure.  Therefore, Mr. Ferens's motion for summary judgment on the DTSA and PAUTSA claims is denied.

## CONCLUSION

Because Mr. Ferens' Glassdoor.com post was not commercial speech as defined under the Lanham Act, summary judgment will be granted as to that claim.  Because there are genuine issues of material fact in dispute as to all of the plaintiffs' remaining claims, the defendant's motion is denied as to those counts.